## SMITTLE v. YADON INVESTMENT CO.

No. 20642. Opinion Filed Nov. 17, 1931.

Rehearing Denied Jan. 12, 1932.

Neal E. McNeill, for plaintiff in error.

George Paschal, for defendant in error.

KORNEGAY, J. This cause started in the district court of Tulsa county, by the filing of a petition to recover $1,000 broker's commission for procuring a buyer for some land that belonged to the defendant, the present plaintiff in error. There was an allegation of the plaintiff being a broker, and of there being listed with the plaintiff the land by the defendant, and the compensation of the plaintiff for securing the sale was to be all the plaintiff could get above $5,500. It was further alleged that the abstract to show title was to be furnished by the defendant below. It further averred the efforts that were made by the plaintiff to get buyers, and the success of the plaintiff in getting a buyer, J. J. McRoberts, and McRoberts paying $1,000 down to the agent, which was changed to a cashier's check the next day, and contains an averment of this $1,000 check being exhibited to the plaintiff in error, defendant below, and the purchaser was acceptable to the plaintiff in error, and that the purchase was to be $6,500 in cash; and the defendant's refusal to furnish the abstract, and claiming that on the 6th of July he sold the land to another party, while the 5th of July was the date of the sale brought about by the plaintiff below, which was accepted on said day by the plaintiff in error, the defendant below.

There was a motion to make more definite and certain filed by the defendant through his attorney, Judge Neal E. McNeill, and also a demurrer, followed by an answer, the answer being filed on the 4th of October, 1928, in the court of common pleas, to which the cause had been transferred. The answer was a general denial, with an admission of the ownership of the property and of its being mortgaged, and the materialman's lien, and the defendant's listing the property with the plaintiff and other real estate agents, informing them all that a quick sale was desired, and that it was in the hands of others. It alleged that on the 5th of June, 1928, Hughes & Mitchell made a written contract of sale of the property to G. H. Hurford for the sum of $6,500, and a copy of that contract is set out with a notary's acknowledgment on it on the 5th of June, and its being recorded on June 6, 1928. There was a denial that the plaintiff had ever sold the property or procured an enforceable contract, but there was an admission that the plaintiff had advised the defendant below on or about the 5th of June of having a prospective purchaser, and that the defendant at said time informed the plaintiff below that the first broker who submitted a contract would be accepted, and that on the 6th of June, 1928, information was given to the plaintiff that the defendant had sold and entered into a written contract for the sale of the property to G. H. Hurford.

Some motions were made to make the answer more definite and certain, and there were some motions to strike, and there was an amendment filed to the answer stating that the repesentative of the Yadon Investment Company, with whom the defendant dealt, was Mr. Carr. A reply was had which was a general denial.

The cause came on for trial before a jury on the 1st of February, 1929, and several witnesses testified, and among others was the defendant himself. This entire record has been read. The evidence clearly showed that the plaintiff below, the Yadon Investment Company, acting through Mr. Carr and another agent by the name of Rubottom, was the procuring cause of the first sale that was made of this property, and that they earned $1,000, according to the contract. It is further clear that on the admission of the defendant himself, as shown on pages 128 to 130 of the case-made, he was first informed of a sale by the agent of the plaintiff below, and the $1,000 check exhibited to him, and that the defendant, instead of objecting, said: "That's fine." That from there he went down to the dog races, and after getting down there he was informed by Mr. Mitchell that he had found a purchaser, and that under Mitchell's deal the commission was to be less than the commission of the Yadon Investment Company,

and the testimony of the plaintiff in error is as follows:

"Q. After you told Mr. Carr when he showed you the check, then it was after that time that you saw Mr. Mitchell? A. Yes, sir. Q. Now, when you saw Mr. Mitchell, did you tell him that Mr. Carr had made the sale of this property to J. J. McRoberts and had a $1,000 check, did you tell him that? A. No, sir. Q. You did not tell Mitchell that? A. No. I told Mr. Mitchell, yes. Q. And he told you he had sold your place, and told you how much he was getting for it? A. And he said you can get more money, and I asked him to whom he had sold it and he said to Mr. Hurford, before that he had said 'George'."

Later he detailed about getting the $500 on the 6th, and it is clear that his contract made with Mitchell was made after all parties had knowledge of the sale that had been brought about by the efforts of the defendant in error.

There are a good deal of objections back and forth as to the testimony that was offered, and the parties reached the stage in the trial of the court's instructing the jury, which the court did. The instructions given by the court to the jury appear to be fair, and those actually given were as favorable to the defendant as he was entitled to, though the plaintiff below did ask for a peremptory, which was refused. The defendant also asked for a peremptory, which was refused, the defendant first asking, and both parties excepting to these refusals.

Complaint is here made of the refusal to give the peremptory instruction on behalf of the defendant below. We think that the court would have committed a grave error if it had given it, and the same way with reference to the demurrer to the evidence. Complaint is made of instruction No. 1. It put in some exceptions that perhaps were not requested in that instruction with reference to improper practice on behalf of the broker, but, as it was more favorable to the plaintiff in error than he apparently was entitled to, he ought not to be heard to complain. Aside from that, the instruction appears to follow the statements that have been heretofore laid down by this court to guide in the case of broker's commissions for bringing about a real estate sale.

The second instruction that is complained of gave the jury legal instruction as to the law arising from property being listed with different real estate agents, and declares that the agent who first brought about the sale was entitled to the commission, and it tells the jury that the burden was on the plain-

tiff to show that the McRoberts check was submitted to the defendant and was accepted by the defendant, and that if the plaintiff had not proved those facts by a preponderance of the evidence, then the verdict should be for the defendant. As applied to this case, it might be said that this instruction was too strong as against the plaintiff below, in the light of the admissions that were made by the defendant below, but we see no error in it of which the plaintiff in error can complain.

Complaint is made of the court's refusing to give instruction No. 1 that was requested by the defendant below. That instruction was as follows (p. 184):

"You are further instructed in order for a real estate agent to recover his commission for making a sale which has not been completed, it is necessary for him to find a purchaser who is ready, willing, and able to buy and to procure a written agreement to buy from the purchaser which would be enforceable against the purchaser if accepted and signed by the seller, provided, however, that the seller and purchaser have not come together and an oral agreement to buy has been made by the purchaser and accepted by the seller.

"Refused and exceptions allowed to the defendant.

"S. M. Rutherford, Judge."

And also No. 2, which is as follows:

"You are further instructed that where real property is placed in the hands of different agents, the seller is only liable for a commission to one who consummates the sale, unless one of said parties claims and proves an exclusive agency.

"Refused and exceptions allowed to the defendant.

"S. M. Rutherford, Judge."

The court refused these instructions, but practically gave the effect of them in the other instructions save the part about the enforceable contract. We do not think that the first instruction asked for comports with previous decisions of this court, or the general law on the subject of what the agent is required to do in order to earn a commission.

Our own decisions on the subject are called to our attention, and one of the leading cases is Pliler v. Thompson, 84 Okla. 200, 202 P. 1017, a decision rendered by this court on December 6, 1921, rehearing denied January 10, 1922, and no dissent, and the strong probabilities are that the instructions given by the court in this case were delivered by the judge in the light of the statements contained in that case. The point was there made that the contract be-

tween the agent and the seller would have to be in writing, and was not sustained, and in that case, in quoting from another case, the principle is clearly enunciated that the agent's duty does not go any further than to furnish a purchaser ready, able, and willing. To the same effect, see Lewk v. Abbott, 121 Okla. 157, 248 P. 605; Cureton v. Crum, 144 Okla. 51, 289 P. 352, citing Pliler v. Thompson.

We do not find in this case that any error has been committed, and the case is affirmed. It appears that a supersedeas bond in the amount of $2,200 has been filed, with S. M. Mitchell and R. D. Smittle as sureties, and judgment thereon is asked for; and it is ordered that judgment be entered upon the supersedeas bond for $1,000, with interest at 6 per cent. per annum from the 8th day of July, 1928, until paid, and costs.

LESTER, C. J., CLARK, V. C. J., and RILEY, HEFNER, CULLISON, and SWINDALL, JJ., concur. McNEILL, J., not participating. ANDREWS, J., absent.